Next case we're going to hear today is Hutto v. SC Retirement System and Mr. Arputian, whenever you're ready, we'll hear from you. Just give me a moment to arrange my... No, that's fine. Take your time. ...materials. Thank you. Please support your honor. This case involves two issues before the court. One is the constitutional takings claim seeking the return of the money taken by operation of state law and prospective injunctive relief ordering cessation of the unconstitutional redistribution of private property for private gain. The retirement system admits Act 153 seizes 8% of the working retirees' wages in exchange for not the benefit of those who pay the wages, but argues that the retirement system enjoys sovereign immunity from the suit under the 11th Amendment. This argument adopted by the district court should be reversed for two reasons. First, even assuming the retirement system is an arm of the state, constitutional takings claims for return of property have never been barred by the 11th Amendment because the takings clause imposes a fundamental restraint on all sovereign power, including the power exercised by the states. And the 11th Amendment specifically does not bar a claim under Ex Parte Young. And we have made such a claim, making claims against the individual trustees of the fund. And all we want, all my clients want, is their money back. Now, it's important to understand that this is a trust created by state statute given all the powers of a corporation to sue and be sued, to enter contracts. Let me ask you just to get my facts straight. The statute was passed on effective July 1, 2005. Yes, sir. And all of these plaintiffs were working or making claims with respect to work after that date. They all came to work after that date. After that date. Yes, sir. So when they came to work as working or returning retirees, they understood that they would be paid, they would be paying into the system as part of their arrangement coming to work. Yes, sir. But while they understood that, under Koontz, the Missouri Railroad case, you can't condition employment upon some exorbitant, extortionate demand. Why is it extortionate? They just say you have to contribute to this plan as part of your employment as a returning person who's already earned his retirement from the state. Because what you're contributing to is a 501A trust. I know, but they knew that when they were hired, and they – it was part of the deal. And extortionate or takings or due process all requires there to be a contractual right to keep that money. But yet when they hired in on after July 1, that was part of the deal. Well, but if part of the deal is to violate the federal law, it can't be – Well, the federal law requires they take this money, tax-deferred out of the employee's check. They put it in a 501A trust with a – and the statute and the federal law require the employee to get a defined benefit for that money. That's why it's tax-deferred. Who said that? They're not in part of a plan. They're paying into the plan as part of the condition of being somebody who has already earned a pension from the state and is now going back to work for the state as a returning retiree. And they say, in that circumstance, keep our plan solvent. We're going to impose what's essentially a tax on these employees, and we're going to pay it into the plan. Well, they could have paid them less. They didn't have to go to work there. They could have gone to work in some private company, or they could have gone – done something else, or not even gone back to work if they didn't like that condition. But, Judge, the problem with all that is, for instance, what if the condition was you come back to work, we're going to take 10 percent of your salary and give it to the Republican Party? Couldn't do that. Violation of the law. The underlying concept of giving this money to a trust that's set up by state statute, but more importantly, under 501A of the federal Internal Revenue Code law, says this money's tax-deferred. They're not paying taxes on it. So, irregardless – that's actually not a word – regardless of whether or not they understood this was what was going to happen, you can't consent to or agree to an illegal act, and this is illegal. You cannot take this money. Let me understand the posture you put this case in. As I understand it, it sounds like you said assume that the 11th Amendment applies here, which means that suit against the state is barred. Nonetheless, this court has jurisdiction now to adjudicate a takings claim. Well, I'm more than happy to discuss why the 11th Amendment doesn't operate. I just thought the takings claim was – I want to make sure we start with that proposition in terms of where you are with your argument. Basically, you are saying that this court, notwithstanding the 11th Amendment being applicable here, says this state is immune from lawsuit. We, nonetheless, there's an exception to that immunity, apparently, what you're saying. Ex parte, young, and it's not against the state. Well, it is. It's an arm of the state. We're talking about an arm of the state. So I don't know how you get around that, but I just want to understand where you're going with that in terms of your argument. I mean, you – and coupled with that, this has already been adjudicated in state court, right? Didn't the Supreme Court of South Carolina hold it against you? Different case, Ahrens, which was people that retired prior to July 1. This case has not had any – None. This case is totally outside of the state court. Yes, sir. And you didn't seek any remedy within the state court. Correct, Your Honor. Why not? Well, we felt that we had a Fifth Amendment takings claim, which we could bring in federal court. It is not an arm of the state. The retirement system, if you use the Oberg analysis, the Allman analysis, the Roche analysis – Even if it is an arm of the state, you can bring that claim. Yes. That's what I'm understanding you're saying. So you don't have to say it's not an arm. You've assumed that is a fact. First of all, we're bringing in the Ex parte Young claim, the Fifth Amendment claim, against the trustees of the retirement system. Is the – I mean, I don't want to – we're not suing the state under the Ex parte Young. We're suing the trustees of the retirement system. And clearly, Ex parte Young says that if all you're seeking is the return of your property and injunctive relief – How can you say it's a return of your property? You never – under the state law, when they worked, they never were entitled to take that property home. They were taxed that amount. The state withheld it. Wrongfully. Well, how can you say wrongfully when the statute says that's what you get paid? Well, it says that's what you get paid, but that is – No constitutional violations of takings would have to be – first of all, going back to Judge Wynn's question, it's pretty shaky for you to be arguing that the takings clause trumps the Eleventh Amendment. I'm not arguing that. I'm not arguing that. And then when you get to Ex parte Young, you still have to have a constitutional claim that they are taking property that – in which you had a property interest. Or wages. Well, except the Supreme Court of South Carolina basically said that these weren't contractual arrangements. Not as to – again, I think there's a little bit of apples and oranges. The South Carolina Supreme Court addressed an errand, and perhaps – You were the lawyer in that case too, weren't you? Yes, sir. Different parties, right? Sir? Different parties, but – Different parties. Same issues. Different issues. That was an issue as to whether or not there was impairment of a contract with the state. And this is what the South – That's necessary for you to get a property interest. In other words, even under Ex parte Young, we can't order them to give that money unless it's their property, and they had a property interest in it. There's no due process violation. Judge, what the Supreme Court of South Carolina said was this in the errands case. Claims of unconstitutional taking, violation of due process, impairment of contract are founded on the presumption that a contractual right has been unfairly taken away. Because we find the retirees – these are pre-July 1 of 2005 retirees – did not have a contractual right to the terms of their employment. We find it unnecessary to address those constitutional issues. So those issues were never addressed by the South Carolina – But what did they say two sentences later? We therefore affirm the district court. Right. Well, the circuit court. The circuit court on that question. The circuit court, right. Right. Well, but the position that we don't have a right to this money – we earn it.  The state takes 8 percent of that, $4,000 a year, and gives it to the other – it puts it in a pension fund. Doesn't it make a difference that the plaintiffs are somewhat different than your case in South Carolina? I mean, the case in South Carolina, these are people who had worked before this law came about. Right. And clearly the court looked at it, but the court didn't do it on the basis of a takings clause. Contract. Okay. So – and now you've got an instance, as Judge Neimeyer has pointed out, you have clients who have chosen – isn't South Carolina an at-will type state? It is. Chosen to go to this particular type of employment, understand what the conditions are, and then proceed to do it, and at the same time then turn around and says, no, you can't take my money like you say you were going to take it, or you can't have this, I'm not going to pay. I mean, how does that work? Well, it works that way because they're taking it for – under the auspices of it being a 501A pension fund. Again, if they said we're going to take 10 percent of your money and give it to the Republican Party, they couldn't do that anymore. They're taking it pursuant to a statute that was enacted. Right. Act 153. That's where they're taking it. And they're not taking it, they're just not paying it. They're saying, if you come to work for us as a retired – a returning employee who's earned his pension, you're going to be paid this, and we're going to take a portion of what we otherwise would give you and put it in this plan. And everybody who came to work after July 1 knew that statute or is imputed with knowledge of it, and those were the conditions of employment. They say, I agree, so they go to work. Now they come back and say, gotcha, I want all that money back. The statute's illegal somehow. Well, it's illegal because – and again, maybe this oversimplifies it, but I would point out that if the statute said you're going to take 10 percent of your money and give it to the Republican Party, Democratic Party, Libertarian Party, it'd be – Why don't you file a suit and challenge the constitutionality of Section 153? Well, that's in effect what we're doing here. That's in effect – we're saying that statute is unconstitutional because it takes – and by the way, you pay Social Security on the $50,000, not $50,000 minus the $4,000. Your wage is $50,000. They take part of your wages and allocate it illegally. And your clients agreed to that, right? Well, we can – What makes it illegal would be as if your argument is that they had a contractual right to that money, and now it's taking stuff, or they had a property interest and there's a due process violation. Well, they do have a property interest. Well, they don't because the statute told them they didn't when they went to work. Well, the statute told them that you have a property interest in your $50,000. We're going to take $4,000 of it and give it to this pension fund. Well, they agree. They go to work on that basis. Where do they get a property right? It's their wages. The Supreme Court – I mean this court – That isn't what the statute says. They gave them those wages. The statute is a deduction from the wages. The statute doesn't set the wages. The statute deducts from the wages. And let me say this. We're at a motion to dismiss. This is not – This is all legal. Anyways, there's no factual determination you can make. We're deciding, number one, can you sue the state on the 11th Amendment? Right. And then you argue, well, we got a little exception here under Ex parte Young for prospective conduct, and so you want in the future the officials to have to return the money. But in order to get that, you still have to show that there's a violation of due process. Well, let me make sure you understand. I'm not conceding that it's an arm of the state. Matter of fact – I understand that, but you're switching. When I ask you a question, then you jump to another – No, no. No, no. I mean what I said to the court was – You're assuming for purposes of my argument right now that they are. Now, if you want to argue the arm of the state issue, that's okay, too. Well, I think we – Let's make – Okay. Arm of the state under Roche, under Oberg, recently decided by this court, under Allman, all those cases indicate that if the money is not levied on the state treasury, that's the most important prong of the four prongs, that it's not an arm of the state. And in this case, not only is it insulated, it is a separate fund. And the statute specifically says it will not be levied – How do you address the constitutional provision which was construed by the – Well, the constitutional provision, very interestingly they say, says or means that the state has to fund any shortfall. That's not what it says. What it says is the General Assembly shall annually appropriate funds and prescribe member contributions for any state-operated retirement system which will ensure the availability of funds to meet all normal and accrued liability of the system on a sound actuarial basis as determined by the governing body of the system. And what happens if it becomes unsound actuarially so that they cannot pay those funds? Well, they can increase – The Supreme Court of Virginia has – I mean, South Carolina has indicated that the state then has to come up with funds. Well, the Wheel case does not say that specifically. Well, what it says is that the fund has to be actuarially sound, but they have to – No, what does it say if it's not actuarially sound? What's the role of the state? The state can increase the employer – Remember now, the state is one of 600 employers, and 80% of the employees – our clients work for the Darlington County School System. The state's taking their money to fund the Florence County teachers' retirement in the future. That's what's happening here. This is not about the integrity of the system. This is about whether or not they can take our money and fund somebody else's retirement with it. And can we agree to that? I don't think so. Okay. We'll hear from Ms. Kandari. You have something to talk about. Ms. Kandari. Good morning, and may it please the Court. My name is Tina Kandari, and I'm here on behalf of the South Carolina Retirement System and the Defendant Appellees in this case. The District Court correctly determined that this case is barred by the 11th Amendment of the United States Constitution. As arms of the state, the Retirement System and the Defendant Appellees are immune from suit in federal court, and there is no exception that applies. Well, it says there's an exception on the Ex parte Young. It says that they are seeking – although it did seem like they were seeking relief other than prospective relief at one point, because they wanted the money back – they say it applies. Well, a continuing federal violation, that's an exception to the 11th Amendment. It most certainly is, Your Honor, but it doesn't apply in this case. The complaint in this case is not limited to prospective injunctive relief. No, it has some backward-looking relief requests, but it is also requesting prospective relief. It is, and – It seems to me, on the Ex parte Young, your argument has to be basically that there's some state of cause of action, that there's nothing that requires them to withhold it because there's no property. Certainly, failure to state a claim would alleviate the need to do the Ex parte Young analysis. But even if the court wanted to keep going down the road of Ex parte Young, it's not automatic that just because they're seeking prospective injunctive relief against someone who's sued in their official capacity that you say, okay, Ex parte Young applies. The court looks further than that. In this case, we know that these defendants are nominal only. They have no – What does it look further? It looks at the relationship between the officer and the actual law that's seeking to be enforced and whether the officer has simply general authority to enforce the law or whether there is particular authority with respect to the enforcement of that law. And that's in this court's decision of South Carolina Wildlife Federation v. Limehouse. The court also looks at the special sovereignty interests of the state. And in this case, the retirement system and the functioning of the retirement system is uniquely within the sovereign of the state. And the court is not going to apply an Ex parte Young exception and have the result be a divestment of that special sovereign interest. And this is most plainly shown in the fact that the South Carolina retirement system has a claims procedure act that says that any disputes that arise under the act must be adjudicated. The exclusive jurisdiction for the adjudication is within the administrative courts of the state of South Carolina. So it's not just a formulaic test. But as Judge Niemeyer, as you just pointed out, there's also the failure to state a claim in this case. No protected property interest has been identified. Without that, you cannot state a claim for takings. You cannot state a claim for violation of due process. And the South Carolina Supreme Court, as this court has already recognized, has definitively decided this issue. This case has been in litigation in the state courts of South Carolina since 2005. These very same arguments have been made and briefed time and time again. Well, because it was a different case. But in this case, it was another case that would hold a different class of plaintiffs on it. I understand that's his position, Your Honor. But those plaintiffs in the state court cases are identically situated legally to the plaintiffs in this case. The date that they came back to work has no bearing on whether they had a protected property interest to the funds in question. So the constitutional analysis, for purposes of constitutional analysis, the plaintiffs are identical. There was a case out of our circuit dealing with the North Carolina retirement system that seems to have indicated that the North Carolina retirement system is not an almond state. That's correct, Your Honor. That's the almond versus Boyle's case. What do we do with that case? Or is it similar? Is it on point to where we are? Or have we got to overrule that? Well, as I'm sure the Court is aware, the analysis is very fact-intensive under Allman. That was a 1986 decision scrutinizing the North Carolina retirement system, which, as the district court points out in her order, she didn't have that statute before her to make that comparison and contrast. And that's not always easily done anyway. You have to look at the case before you. But because of its age, because it's a 1986 case, the Allman case doesn't apply the four-factor test. It only applies a two-part test, looks at whether there's an impact on the Treasury and looks at the autonomy of the retirement system. It gave very little weight to the fact that a state appellate court in North Carolina had already said that the retirement system was immune from suit. So it didn't even look at that, and it didn't focus on the statewide versus local analysis. So that case is not binding on this Court. It's a different set of facts, and it's a different test altogether at this point. In addition to the 11th Amendment argument as well as the failure to state a claim, if this Court disagrees with either one of those propositions, the state Supreme Court's decision in this case should be given preclusive effect. The federal court is required to give the same preclusive effect to a state court decision as that jurisdiction would. In this case, the South Carolina Supreme Court definitively decided the issues in this case. Why would we have to give it preclusive effect? Why isn't it enough just to say that they have already construed the nature of the pension interest as being non-factual and that that's the law that we have to abide by as the state court has construed its own pension system? To give it preclusive effect, you have to go through all of these questions about whether the parties are the same. That's correct. It's certainly more efficient for the Court to just... You might want to stick with the first part of the argument. Okay. Thank you. Unless the Court has any questions, I'm happy to walk through the immunity analysis of the four factors and tell you all about the South Carolina retirement system. We did so, I think, pretty thoroughly in our brief. I'm happy to do that again here or again, as I think the Court's indicated, the South Carolina Supreme Court has ruled on this issue. Thank you. Please, the Court. A couple of things I want to make clear, in case I didn't in my somewhat incoherent ramblings a moment ago, was that we believe they are not an arm of the state. We've outlined that. We've used the Olberg factors. We've used the Allman factors. We've used the Roche factors. Clearly, this is not an arm of the state. We have a basic disagreement with the district court on that position. There is no difference. As a matter of fact... Which of your factors are you saying that Judge Charles is wrong on? Well, she says that the state treasury would be responsible for some shortfall. Is that the first factor? Yes, sir. Which, like the Allman case, if you use the analysis in the Allman case, and she uses the word possibly. The Allman case is a 1986 case. Life has changed a bit. And we're here. We're looking at four factors. Yes. And we've got a number of other circuits that look at similar type systems that have found that to be an arm of the state, too. Well, this... Not this particular one, but other similar type systems. But speak to the first factor on the person in terms of... All right. And let me make sure I don't miss any of the factors. The first factor is whether or not the state treasury would be liable for any judgment in this case. And you look at whether or not the structure... Why do you limit the judgment? It seems to me the question is whether the South Carolina FISC could be impacted by the system. And the district court relied on the fact that South Carolina has to address a potential shortfall. A shortfall is not factuarially sound. The Constitution of South Carolina requires the state to make sure it stays constitutionally sound by appropriation. Well, two points on that. The first point is there's nothing in this record anywhere to indicate that a judgment in this case would affect the financial stability of the fund. Stick with my question. All right. It's easy to slide off into something else. My question is does the state have to keep the pension system actuarially sound through appropriations? They have to ensure that employer and employee contributions combined with the benefits being paid... They could cut benefits for future employees. They could increase payments by current or future employees. They could increase payments by current or future employers. The state is one of the employers of the 600. Just answer the one question. Does the state have to appropriate money to address the actuarial shortfall in the system where the system is not funded? No. What's the constitutional provision say as construed? Well, as construed, it says that it needs to make sure that the system is actuarially sound. You're asking if they have to come up with an appropriation. Hasn't the South Carolina Supreme Court said that that's so? No. What they've said is that the legislature has to make sure it's physically and actuarially sound. There is a difference between having to come off with an appropriation for $100 million or $50 million or $10 million as opposed to ensuring it's physically sound or actuarially sound by increasing employer and employee contributions, cutting benefits. There are a number of different ways. And the other point that I think is extremely important is, you know, the attorney general is not sitting here today. This is a private firm representing a private entity. Are most of the employees that we're talking about— Does the South Carolina Constitution forbid the funds from this retirement from being used for anything other than member distribution? That's correct. So if you recover a judgment, and let's say you had attorney's fees, you had costs, fees, who would pay that? Don't want them. You were working for free. No, we take it out of the common fund. We will not ask the state of—we've said this 10 times. We're not going to ask the state of South Carolina for— What if your judgment made the fund unsupportable, actuarially unsupportable? You could no longer pay the benefits. Who would pay the shortfall? Well, I mean, there's—if it became—this is a $40 billion fund. Hold it. Just take my hypothetical. Okay, well— You want to argue the facts and slide off. My hypothetical is, if a judgment makes the fund actuarially unviable, who has to come up with the shortfall? The employers, the employees, people that participate in the fund. As a state, under the Constitution? As an employer. Yes, sir. As an employer. That's all that constitutional provision. If reading that constitutional provision other than the way I want to read it means that the statutes which say the state is not responsible for any shortfall would render those unconstitutional and in conflict. So we've got to read them harmoniously under a state and federal law. And to do that, you have to read it the way I say to read it, which is it governs the employer contribution by the state and the state's ability to raise that, the employee's contribution, and cut benefits. It's not—and again, yours is a hypothetical. The facts are that this is not a hypothetical situation. These are people that are having to pay a significant portion of their income to a pension fund for which they will never get the defined benefit that the federal law guarantees them. And the state gets the benefit of the sweat of their brow without giving them anything but a job, which this court has said, or in the Coons case, the United States Supreme Court has said, ain't enough. Okay. Thank you. We'll come down and greet counsel and take a short recess.
judges: Paul V. Niemeyer, James A. Wynn, Jr., Stephanie D. Thacker